**MONONGAHELA POWER COMPANY,**
an Ohio corporation, Appellant,

v.

**LOCAL NO. 2332 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO–CLC, et al.,** Appellees.

No. 73–1680.

United States Court of Appeals,
Fourth Circuit.

Argued July 17, 1973.

Decided Oct. 2, 1973.

Leonard L. Scheinholtz, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., and Richard H. Talbott, Jr., Elkins, W. Va., on brief), for appellant.

Stanley M. Hostler, Charleston, W. Va. (Hostler, Logsdon & Shinaberry, Thomas P. Maroney and Maroney & McHugh, Charleston, W.Va., on brief), for appellees.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

The plaintiff Monongahela Power Company brought this action below to enjoin a work stoppage allegedly in violation of a collective bargaining agreement with Local No. 2332, International Brotherhood of Electrical Workers, and to order arbitration. The district court, acting under the grant of jurisdiction contained in Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, held inapplicable the *Boys Markets* [1] exception to the anti-injunction mandate of the Norris-LaGuardia Act, 29 U.S.C. § 104, and denied injunctive relief. We reverse.

Monongahela is a public utility which provides electric service to most of northern and central West Virginia. Defendant Local 2332 is the collective bargaining representative for all hourly-paid employees of the Company's Panhandle Division located in Weirton, West Virginia. In early May 1973, members of Local 2357 went on strike at the Company's Clarksburg Division. Pickets from Local 2357 were subsequently established at the Panhandle Division in Weirton to publicize the strike then being conducted in Clarksburg. In order to show sympathy and solidarity with members of the Clarksburg Local, the employees of the Panhandle Division represented by the defendant Local 2332 refused to cross the picket line, and a work stoppage followed. William Wilharm, manager of the Panhandle Division, made repeated requests for the Panhandle employees to return to work, and he asked both the Local and the Cincinnati Regional Office of the IBEW to disavow the work stoppage and to direct its members to return to work and process any grievance they might have through the applicable steps of the grievance procedure contained in the collective bargaining agreement. No action to end the strike was taken by the Panhandle employees, the Local, or the Regional Office, and the work stoppage continued.

The collective bargaining agreement between Local 2332 and the Company became effective on March 1, 1972, and continues in force until July 1, 1974. It provides in part as follows:

### ARTICLE IX

#### Adjustment of Grievance

Section 1. Any dispute between the Company or employees covered by this Agreement with respect to the interpretation, application, or *claimed violation* of any express provision of this Agreement shall constitute a grievance which shall be settled in accordance with the provisions of this Article.

.     .     .     .     .     .

### ARTICLE X

#### No Strike—No Lockout

Section 1. During the term of this Agreement, there shall be no strike, work stoppage, slowdown or any other interference with or impeding of work.

Section 2. No employee shall participate in any such strike, *work stoppage*, slowdown or any other interference with or impeding of work and the Union will not authorize, instigate, aid or condone any such activity. Upon notification by the Company that a violation of this Article exists or is threatened, the Union shall immediately take all steps within its

---

1. Boys Markets, Inc. v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed. 2d 199 (1970).

power to prevent or terminate any action or conduct in violation of this Article. [Emphasis added.]

The Company brought this action in district court seeking both injunctive relief and damages on the grounds that the refusal to cross the picket line and the resultant work stoppage were in direct violation of Article X of the collective bargaining agreement. The defendant Local contended that the refusal to cross the picket line was an individual decision of each employee, neither authorized nor sanctioned by the Local, and that the employees were engaging in activity which was protected by Section 7 of the National Labor Relations Act, 29 U.S.C. § 157,[2] and which did not come within the scope of *Boys Markets*. Following a hearing, the district judge orally denied the Company's application for a preliminary injunction, and an order denying both preliminary and permanent injunctive relief was thereafter entered.[3]

A brief history and analysis of federal labor policy is required in order to determine whether the district court erred in concluding that *Boys Markets* was not applicable to the facts of this case and that the court was therefore barred by the Norris-LaGuardia Act from granting an injunction against the work stoppage.[4] Congress passed the Norris-LaGuardia Act in 1932 as a reaction to the widespread misuse by federal courts of injunctive relief in labor-management controversies.[5] Section 4 of the Act prohibits federal courts from issuing temporary or permanent injunctions in most labor disputes,[6] and strict procedural safeguards are provided for those cases where injunctions are appropriate. 29 U.S.C. §§ 107–112.

Against this clear federal policy of nonintervention in labor disputes, however, emerged an "equally strong policy to encourage the settlement of labor disputes through enforcement of compulsory arbitration agreements." Avco Corp. v. Local No. 787, 459 F.2d 968, 970 (3d Cir. 1972). Section 301 of the Labor Management Relations Act, passed in 1947 to supplement existing state jurisdiction over labor contract matters, granted federal courts jurisdiction over "suits for violation of contracts between

---

2. 29 U.S.C. § 157 provides:

   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

3. By stipulation of the parties, it was agreed that the hearing on the preliminary injunction would constitute the final hearing on the merits with respect to the Company's application for injunctive relief. Subsequently, we granted the Company's motion under Appellate Rule 8 for an injunction pending appeal, and accelerated the appeal.

4. The district judge concluded:
   [U]nder the prescriptions that are presented to the Court under the Norris-LaGuardia Act, we find ourselves in the position where injunctive relief cannot be granted at this juncture and under these facts.

   The Court does not believe that the limited rulings and teachings of the Boys Market case are such that would permit us, under the facts of this case, to open up the prohibited injunctive avenue to stop the work stoppage that is here presented.

5. Vladeck, Boys Markets and National Labor Policy, 24 Vand.L.Rev. 93, 94 (1970); see Note, The New Federal Law of Labor Injunctions, 79 Yale L.J. 1593, 1594 (1970).

6. 29 U.S.C. § 104 provides in part:
   No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
   (a) Ceasing or refusing to perform any work or to remain in any relation of employment . . . .

an employer and a labor organization." [7] Although initially considered only a grant of jurisdiction,[8] Section 301 was later interpreted to allow federal courts to order specific performance to enforce arbitration provisions in collective bargaining agreements. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).[9]

In Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the Supreme Court failed to reconcile these two competing federal labor policies—the prohibition against antistrike injunctions and the preference for compulsory arbitration to maintain industrial peace. *Sinclair* involved a strike in direct violation of a no-strike provision in a collective bargaining agreement. The Court affirmed the district court's refusal to enjoin the strike by adopting a literal reading of Section 4 of Norris-LaGuardia, 29 U.S.C. § 104, and holding that the Act's anti-injunction provision was not limited by Section 301 of the LMRA, *i. e.*, federal courts do not have jurisdiction to issue injunctions against violations of a no-strike clause if the labor dispute is one encompassed by Section 4.[10] The effect of *Sinclair* was to create a new dilemma: if its holding were limited to federal courts, and injunctive relief left available in state courts, the declared need for uniformity among state and federal courts [11] with

respect to enforcement of labor contracts would be destroyed; if *Sinclair* were extended to state courts, it would have to be done despite "explicit evidence that Congress expressly intended not to encroach upon the existing jurisdiction of the state courts." Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 509, 82 S. Ct. 519, 523, 7 L.Ed.2d 483 (1962).[12]

The Supreme Court decided *Boys Markets* in order to solve the dilemma created by *Sinclair* and to avoid possible "wholesale dislocation in the allocation of judicial business between state and federal courts" that might be caused by disparity of remedy available in courts of concurrent jurisdiction. 398 U.S. at 246–247, 90 S.Ct. at 1590. The Court there chose to reject the literal interpretation of Norris-LaGuardia announced in *Sinclair* and to adopt a strong policy favoring the settlement of labor disputes through enforcement of compulsory arbitration. By way of explanation of its decision to overrule *Sinclair* in favor of enforcing arbitration agreements, the Court stated:

> The *Sinclair* decision . . . seriously undermined the effectiveness of the arbitration technique as a method peacefully to resolve industrial disputes without resort to strikes, lockouts, and similar devices.

.    .    .    .    .    .

**7.** 29 U.S.C. § 185 provides in part:
  (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**8.** *See* Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955)

**9.** The Supreme Court in 1960 further reinforced the federal policy favoring arbitration as the best way to settle labor disputes in the *Steelworkers Trilogy.* United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403

(1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). *See* Vladeck, Boys Markets and National Labor Policy, 24 Vand.L.Rev. 93, 95 (1970); Note, Labor Injunctions, Boys Markets, and the Presumption of Arbitrability, 85 Harv.L.Rev. 636, 637–38 (1972).

**10.** Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 203, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

**11.** Teamsters Union v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

**12.** *See* The Supreme Court, 1969 Term, 84 Harv.L.Rev. 32, 193 (1970).

We conclude, therefore, that the unavailability of equitable relief in the arbitration context presents a serious impediment to the congressional policy favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes, that the core purpose of the Norris-LaGuardia Act is not sacrificed by the limited use of equitable remedies to further this important policy, and consequently that the Norris-LaGuardia Act does not bar the granting of injunctive relief in the circumstances of the instant case.

398 U.S. at 252–253, 90 S.Ct. at 1593.

The anti-injunction provision of Norris-LaGuardia still retained much of its vitality after *Boys Markets*, however, as the Court specifically limited its holding —that injunctive relief against labor disputes may be available—to a narrow fact situation.

We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance. The dissenting opinion in *Sinclair* suggested the following principles for the guidance of the district courts in determining whether to grant injunctive relief—principles that we now adopt:

"A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance."

398 U.S. at 253–254, 90 S.Ct. at 1594. (Emphasis in original.)

We believe the facts of the instant case clearly bring it within the narrow *Boys Markets* exception. The collective bargaining agreement between the Company and the Local is written in extremely broad and encompassing language. Article X of the agreement prohibits employees from participating in any work stoppage or interference with or impeding of work, and it forbids the union from authorizing or condoning such activity. Further, the union has the affirmative duty to take all steps necessary to terminate this conduct upon notification that a violation of the agreement is threatened. Article IX provides for the mandatory adjustment of any unresolved grievance which involves "the interpretation, application, or claimed violation of any express provision of this Agreement."

The wording of a particular arbitration agreement is an important factor in determining questions of coverage. United Textile Workers v. Newberry Mills, Inc., 315 F.2d 217, 218–219 (4th Cir. 1963). The Supreme Court has stated that courts should liberally construe such agreements, resolve all doubt in favor of arbitration, and order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4

L.Ed.2d 1409 (1960). Applying this standard [13] to the arbitration agreement before us, we think the dispute as to whether the refusal to cross the picket line and the resulting work stoppage violated Article X was clearly subject to mandatory adjustment under Article IX.

■ We also note that it is immaterial to the Company's duty to arbitrate that the grievance procedure is employee oriented. The Company is bound to arbitrate if the Local elects to pursue that remedy, and the Local is bound to arbitrate a grievance rather than to resort to a work stoppage. *Avco, supra,* 459 F.2d at 972. The claimed violation of the bargaining agreement is, therefore, "a grievance which both parties are contractually bound to arbitrate."

The final element necessary to bring the case within the doctrine of *Boys Markets* is whether an injunction is warranted under ordinary principles of equity.[14] The district judge below specifically found that a breach of the no-strike clause had occurred and would continue, that the work stoppage had caused and would continue to cause irreparable injury, and that the Company had no adequate remedy at law. He then concluded that "under general equitable principles, the injunction would and should issue as a matter of course."

■■ While the district court made these findings which we think sufficient to require the application of *Boys Markets,* the district judge refused to enjoin the work stoppage, apparently in reliance upon NLRB v. Union Carbide Corp., 440 F.2d 54 (4th Cir. 1971). The holding we enunciated in *Union Carbide* was that the action of two non-striking employees, who refused as a matter of principle to cross a picket line maintained by striking employees of a common employer, was protected activity within the meaning of Section 7 of the National Labor Relations Act and that the employer's action in discharging these employees violated Section 8(a)(1) of the Act. There, however, the discharged employees were not covered by a collective bargaining agreement and, consequently, were not subject to the provisions of a no-strike clause. While there exists a statutory right of employees to refuse to cross a picket line of another union, 29 U.S.C. § 158(b), this right may be waived, and was waived here, by the action of their union in agreeing to a no-strike clause. NLRB v. Rockaway News Supply Co., 345 U.S. 71, 80, 73 S.Ct. 519, 97 L.Ed. 832 (1953). We believe, therefore, that *Union Carbide* is distinguishable from the case before us.

■ As their final contention, the defendant Local contends that each employee individually decided not to cross the picket line, and that these refusals were not sanctioned by the Local. We think this argument is contrary to the evidence and merits little discussion. The Local had a duty under the bargaining agreement to do all within its power

13. Although we believe the presumption of arbitrability is the correct standard to be applied, *see, e. g.,* Avco Corp. v. Local No. 787, 459 F.2d 968, 973 (3d Cir. 1972); General Cable Corp. v. Local No. 1798, 333 F.Supp. 331, 334 (W.D.Tenn.1970), we believe that the issue in this case is so clearly arbitrable that we would reach the same result even if we applied the inverse presumption. *See* Note, Labor Injunctions, Boys Markets, and the Presumption of Arbitrability, 85 Harv.L.Rev. 636 (1972).

14. The specific requirements of *Boys Markets* have been listed as follows:
In an attempt to insure that the abuses which the Norris-LaGuardia Act was designed to correct would not reappear, the Court established guidelines for the district courts to follow when granting injunctive relief: (1) the collective bargaining agreement must contain a mandatory adjustment or arbitration procedure; (2) the court must first determine that the strike is over a grievance which both parties are contractually bound to arbitrate; (3) the court must order the employer to arbitrate as a condition of his obtaining an injunction against the strike. Beyond these specific guidelines, the court, according to *Boys Markets,* must consider whether issuance of an injunction would be warranted under ordinary principles of equity.
Note, The New Federal Law of Labor Injunctions, 79 Yale L.J. 1593, 1597 (1970).

to terminate any conduct by its members which violated the agreement. Yet, neither the Local nor its Regional Office took any action whatsoever to induce the employees to cross the picket line, even after repeated requests by the Company to disavow the work stoppage. We have no difficulty in concluding, therefore, that the Local did in fact condone the employees' refusal to cross the picket line.

The case will be remanded to the district court for the issuance of an appropriate injunction compelling arbitration and preventing work stoppage pending arbitration. Pending action by the district court, our Rule 8 injunction will be continued.

Reversed and remanded.