497 F.2d 311
 86 L.R.R.M. (BNA) 2337, 74 Lab.Cas. P 10,022
 PILOT FREIGHT CARRIERS, INC., Appellee,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFFURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, et al., Appellants.
PILOT FREIGHT CARRIERS, INC., Plaintiff-Appellee,
v.
LOCAL 391, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.,
Defendants-Appellants.
 Nos. 74-1454, 74-8036.
 United States Court of Appeals, Fourth Circuit.
 Argued April 29, 1974.
Decided May 8, 1974.
 
 David Previant, Milwaukee, Wis. (L.N.D. Wells, Jr., Dallas, Tex., Ian D. Lanoff, Washington, D.C., Norman B. Smith, Greensboro, N.C., Hugh J. Beins, Milwaukee, Wis., and Renn Drum, Jr., Winston-Salem, N.C., on brief), for appellants in Nos. 74-1454 and 74-8036.
 J. W. Alexander, Jr., Charlotte, N.C. (William Kearns Davis, Winston-Salem, N.C., Blakeney, Alexander & Machen, Charlotte, N.C., and Deal, Hutchins & Minor, Winston-Salem, N.C., on brief), for appellee in Nos. 74-1454 and 74-8036.
 Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit judges.
 PER CURIAM:
 
 
 1
 In this case, the district court relied on Monongahela Power Company v. I.B.E.W., 484 F.2d 1209 (4th Cir. 1973) and Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), in issuing a preliminary injunction enjoining members of Teamsters Local 391 from refusing to cross a picket line set up by Teamsters Local 512 at the Kernersville, N.C. terminal of Pilot Freight, Inc. (Pilot). The employer, and Local 391 are parties to the National Master Freight Agreement, and the district court found that the relationship between Article 44, the no-strike clause of the agreement, and Article 9, a clause which gave individual union members the right to refuse to cross a primary picket line, was an arbitrable matter. Further, the court held that the issue of whether the picketing was primary or not was arbitrable. The union was then successful in obtaining a stay pending appeal under F.R.A.P. 8 from a judge of this court on April 8, 1974. Expedited appeal was granted from both these decisions.
 
 
 2
 We conclude that the district court reached the correct result in its determination that these matters were arbitrable, but erred in enjoining the individual union members from crossing the picket line. Therefore, we vacate the district court injunction insofar as it applies to individual union members, reinstate the injunction so that Local 391 may not engage in a strike until the issue is further considered by the district court, and, accordingly, vacate the stay pending appeal insofar as it would allow Local 391 to respect the picket line. Further, since we are advised arbitration has already begun on these issues, and is now pending at the level of the Eastern Conference Joint Area Committee, we remand this case for the district court to determine whether the injunction should remain in effect until the arbitration proceeding is final.
 
 
 3
 The dispute arose when Teamsters Local 512, which was attempting to organize the Jacksonville, Florida, terminal of Pilot, established roving picket lines at Pilot terminals throughout its system. Many of Pilot's Kernersville employees, who were members of Local 391, refused to cross the picket line and go to work, contending that even though the National agreement had an express no-strike clause, the contract clause allowing them to refuse to cross a primary picket line was an express exception to the no-strike clause. Thus, the union has taken the position from the outset that no arbitrable dispute had arisen, and that whether the picket line was secondary or primary was not arbitrable. The union also contends on this appeal that Pilot has already had these issues arbitrated by the National Grievance Committee in a proceeding which took place while this suit was being heard, and, having lost in that arbitration, cannot arbitrate the same issues again.
 
 
 4
 Pilot argues that Boys Markets and this court's decision in Monongahela Power Company, supra, control disposition of this case since, even though Article 9 may protect the right of individual employees to respect picket lines, the scope of Article 9 is nevertheless arbitrable. Pilot also contends that the arbitration proceeding already accomplished by the National Grievance Committee did not consider all of the questions raised here. The thrust of Pilot's allegation is that the national Teamsters union has encouraged, financed, fostered and ordered its members to refuse to cross the picket lines of Local 512 which has had the effect of causing a system-wide strike, and that the union has thus attempted to mask this strike as being protected by the rights granted by Article 9 of the agreement. Article 9, Pilot concedes, does give individual employees the right to refuse to cross a primary picket line, but would not allow a directed and concerted refusal on behalf of Local 391.
 
 
 5
 We first reach the issue of whether Pilot has already had opportunity to arbitrate these issues. That arbitration proceeding was initiated by a grievance filed by Teamsters Local 728, of Atlanta, Georgia, against Pilot. The factual setting at Atlanta was the same as here, in that Pilot had sought, pending arbitration, an injunction prohibiting Local 728 from respecting Local 512's picket line at their Atlanta facility. A temporary restraining order and order to arbitrate was granted by the district court in Atlanta on March 6, 1974, which order was directed to Local 728, Local 515, and certain individually named members of the two Locals. Local 728 promptly filed its grievance contending that Pilot had violated the rights of its members under Article 9 of the agreement. The grievance was heard by the National Grievance Committee in Chicago, Illinois, on March 20 and 22, 1974. At that hearing, Pilot complained at great length that it had never been informed what specific acts it was charged with doing that violated Article 9. The union responded that Pilot had violated Article 9 by seeking an injunction against individual employees for doing what they were clearly allowed to do under Article 9 of the agreement. The National Committee limited their consideration to this charge, and concluded that Pilot did violate Article 9 by bringing injunctive proceedings against individual employees. After this arbitration hearing, the Atlanta district court, although noting that the National Committee had not dealt with all of the issues in dispute between the parties, nevertheless dissolved the preliminary indunction it had issued because it concluded that Pilot's employees were protected in the factual situation there by Article 9 of the agreement. The Local 728 arbitration, however, necessarily held that the individual employees were protected in their refusal to cross the picket line.
 
 
 6
 However, we do not think all of the issues raised in the case at hand were arbitrated by that Committee. Pilot presses on appeal that, although individual members may be protected in their refusal to cross picket lines, the national union acting in concert with the local may not further, encourage, finance, or order its members to refuse to cross such picket lines, and that so doing is a violation of the no-strike clause of the collective bargaining agreement.
 
 
 7
 The National Master Freight Agreement in the present case does have a mandatory grievance procedure (Article 8) regarding any dispute under the contract. The relationship between the no-strike clause and the clause allowing individual employees to refuse crossing a primary picket line was, we think, an arbitrable matter, as is Pilot's contention about the underlying dispute, whether the local union or national union had directed or influenced concerted activity not to cross the picket line, as opposed to individual employees' decisions not to cross it. On the merits, the arbitration must decide whether Article 9, whatever its scope is found to be, had been complied with or whether the union is using Article 9 as a subterfuge to strike in violation of the agreement. We think the parties intended to submit disputes of this nature to arbitration, and, in any event, we must construe the agreement liberally in favor of arbitration. United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 564, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
 
 
 8
 The preliminary injunction of the district court, then, must be vacated as to the individual members, but its preliminary injunction as to the union defendants reinstated. The stay pending appeal is dissolved. Upon remand the district court will consider whether its preliminary injunction should remain in effect as directed to the union defendants during the pending arbitration before the Eastern Conference Joint Area Committee in the proceeding there styled R-125-74, Pilot Freight Company, Inc. v. Local 391.
 
 
 9
 The mandate will issue forthwith.
 
 
 10
 Remanded.