CONSOLIDATION COAL COMPANY, Appellee,

v.

LOCAL 1702, UNITED MINEWORKERS OF AMERICA; Freddie W. Kelley, Jr.; Charles R. Fetty; Paul Smerdell; Jack P. Christoff and Richard A. Roberts, Appellants.

No. 81–1817.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 1, 1982.

Decided July 6, 1982.

C. Patrick Carrick, Fairmont, W. Va. (Ross Maruka, Fairmont, W. Va., on brief), for appellants.

Robert M. Steptoe, Jr., Clarksburg, W. Va. (C. David Morrison, Steptoe & Johnson, Clarksburg, W. Va., on brief), for appellee.

Before ERVIN and CHAPMAN, Circuit Judges, and MICHAEL *, District Judge.

ERVIN, Circuit Judge:

This is an appeal from an order of the district court finding the appellants in civil

contempt for failure to obey the court's temporary restraining order. In the TRO the court had ordered the United Mine Workers of America Local 1702, its officers, agents and members to end a wildcat strike at Consolidation Coal Company's Blacksville Mine No. 2. At the show cause hearing, the court found that the appellants refused to obey the TRO without good cause and assessed fines. We affirm.

I.

Consolidation Coal Company mines, processes, and transports bituminous coal from mines in West Virginia, Virginia and other states. In January 1981, Consolidation employed about 400 miners at its Blacksville No. 2 Mine in Monongalia County, West Virginia, all of whom were members of the United Mine Workers Union Local 1702.

On Thursday, January 29, 1981, Consolidation suspended and expressed its intention to discharge employee John Anderson for allegedly stealing property from the mine. The midnight shift at the Blacksville No. 2 Mine began a wildcat strike in protest of Anderson's dismissal at 12:01 A.M. on January 30. The union contract provided that all local disputes would be settled by specific grievance and arbitration procedures.[1] Accordingly, on the afternoon of January 30, the District Court for the Northern District of West Virginia issued a TRO pursuant to F.R.C.P. 65 restraining Local 1702, its officers, mine committeemen and members from

(a) Engaging in or continuing to engage in, supporting or encouraging, reinstituting, by failing to take reasonable steps to end, or otherwise, the current strike or work stoppage at the Blacksville No. 2 Mine of plaintiff, Consolidation Coal Company, in Monongalia County, West Virginia . . . .

---

* The Honorable James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation.

1. The arbitration hearing initially was scheduled for February 3, but the arbitrator would not compel Consolidation to proceed because the strike was still in process. The hearing was held the following day and, as a result, Anderson was reinstated with back pay.

(b) Engaging in, causing, supporting or encouraging, any strike or work stoppage at plaintiff's Blacksville No. 2 Mine, over or in connection with any dispute or disagreement which is required to be settled by the grievance and arbitration provisions of The National Bituminous Coal Wage Agreement of 1978.

Notice of the TRO by certified copies was properly served upon those affected on January 31.

On February 1, the officers of Local 1702 called a special meeting to discuss the strike. At that closed meeting several officers and committeemen told the members to return to work. The officers also went to the gate at the beginning of the 12:01 A.M. shift on February 2 and again urged the members to return to work. None of the members returned to work until February 4.

On February 2, the district court ordered Local 1702 and its officers to show cause why they should not be found guilty of civil contempt for failure to comply with the TRO. An evidentiary hearing was held on February 3 where it was established that the officers or committeemen had not attempted or offered to go back to work; that they had not urged the membership to go back to work except at one meeting and between shifts; and that the officers had not threatened the membership with disciplinary measures for continuing to engage in an unauthorized strike in the face of a TRO ordering them back to work. Upon this evidence, the district court held Local 1702, its officers, committeemen, and members in civil contempt for willfully violating the January 30 TRO and for not taking "reasonable steps in a bona fide effort to cause the members of Local 1702 ... to return to work." The court also found Local 1702 in contempt by virtue of the mass action of its members. The court found that Consolidation had sustained losses amounting to $50,000 a day while the strike had continued and levied fines as follows: Local 1702—$3,000 per shift; each officer, committeeman and local members—$25.00 per shift.[2] Consolidation also brought an action for damages against Local 1702 for breach of the collective bargaining agreement.

This appeal raises the issues (1) whether the district court lacked jurisdiction to issue the TRO, (2) whether the contempt conviction can be appealed separately from Consolidation's claim for damages, (3) whether the court erred in holding the appellants in contempt, and (4) whether the appellants established the defense of good faith efforts to comply with the TRO.

II.

The union officials first contend that the district court did not have jurisdiction to fine them for civil contempt. They argue that because the Supreme Court recently held that section 301 of the National Labor Relations Act, 29 U.S.C. § 185, does not permit a damage award against local union officials for violation of a no-strike provision of a collective bargaining agreement, see *Complete Auto Transit, Inc. et al. v. Reis, et al.*, 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1981), the district court did not have the power to fine them for civil contempt. It is clear, however, that the courts have the power to issue injunctive relief against local union officials for violation of collective bargaining agreements. *Boy's Markets, Inc. v. Retail Clerk Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). A fine for civil contempt is merely a means to enforce a court order of injunctive relief, in this case a TRO. It is not a damage action. Although a fine for civil contempt does have a compensatory aspect to it, the fines are designed primarily to coerce behavior. To give a court the power to issue injunctive relief without the power to fine those individuals who disobey the court order is to give a court the power to grant a remedy without effective means to enforce it. The

---

**2.** On July 17, 1981, the court reduced the fine against the local to $500.00 and against the officers and committeemen to $10.00 per shift.

Fines assessed against individual members of Local 1702 were remitted totally.

power to fine is based on the power to fashion injunctive relief, not the power to assess damages. *Reis* simply is not authority for the proposition that a court cannot fine individuals for violation of its order to return to work. We conclude, therefore, that 29 U.S.C. § 185 does not prevent the district court from finding the union officials for disobeying its back to work order.

### III.

█ In general, a criminal contempt conviction is appealable as a final decision of the district court while a civil contempt conviction is not.[3] Consolidation contends that the contempt in this case was civil and that the conviction, therefore, is not appealable separate from its underlying contract action for damages. We recognize at the outset that the gist of criminal contempt is to punish past behavior, while the essence of civil contempt is to coerce future behavior. To determine whether a contempt order was civil or criminal we must decide whether the contempt order was both forward-looking in application and compensatory in nature. *Windsor Power House Coal Co. v. District 6, United Mine Workers of America*, 530 F.2d 312, 316 (4th Cir. 1976).

It is clear that the fines assessed by the district court were, for the most part, to be calculated prospectively on a per-shift-missed basis. The fines, however, began with the 12:01 A.M. shift on February 2, while the show cause hearing was on the afternoon of February 2. This means that two shifts worth of fines were effective immediately upon issuance of the order. In its order, the court did state that it would entertain a motion to remit the fines imposed if the workers returned to work "at the next available shift following issuance of the order." Thus, while the application of the order was not totally prospective, it was prospective for the most part, and the judge indicated that any retrospective effect of the fines might be lifted if the workers returned to work immediately.

There also was overwhelming evidence that the fines were compensatory. At the show cause hearing, the court found that Consolidation was losing $50,000 a day because of the strike. The contempt order stated that fines assessed to Local 1702, its members, and officials were to be paid to the clerk for the exclusive benefit of Consolidation and that the fines would be set-off, against any damages Consolidation recovers in its breach of contract action. Thus, the fines assessed pursuant to the contempt order clearly are compensatory in nature.

In *Windsor Power House Coal Co., supra*, the fines assessed operated prospectively only. They were not clearly compensatory however, because they were not to be paid for the benefit of Windsor Power House. Nevertheless, because the overall nature of the contempt order was to coerce prospective behavior by the workers, the court found the contempt order to be civil in nature and dismissed the appeal.

We are convinced that the record in this case indicates that the essential purpose for the contempt order was to coerce compliance with the TRO. The district court clearly understood its actions as coercive in nature because it reserved "the right to impose further and more severe sanctions as required to obtain compliance with" its order. Therefore, even though the contempt order operated retrospectively to some degree by imposing fines for the two early shifts on February 2, the essential purposes of the contempt order were to compensate Consolidation and coerce compliance with its TRO. We conclude, therefore, that Local 1702, its officers and members were found guilty of civil contempt.

█ The rationale for the rule of non-appealability of a civil contempt conviction is that the person convicted usually has an

3. "[A] civil contempt proceeding is in effect a continuance of the main action and therefore a party to a suit may not review upon appeal an order fining or imprisoning him for civil contempt except in connection with appeal from a final judgment of the main claim." *Carbon Fuel Co. v. United Mine Workers of America*, 517 F.2d 1348, 1349 (4th Cir. 1975) (quoting, Wright *Civil and Criminal Contempt in Federal Courts*, 17 F.R.P. 167, 176 (1955)).

opportunity to raise the issue in an appeal of the underlying claim, which in this case would be Consolidation's breach of contract claim. For this reason, there is an exception to the rule of nonappealability when a person held in contempt is no longer a party to the underlying claim. *Southern Railroad Co. v. Lanham*, 403 F.2d 119 (5th Cir. 1968). Here, the district court that tried the breach of contract claim dismissed the complaint against the Local 1702 officials. Appellants contend, therefore, that this appeal is the only opportunity the officials have for review of their contempt convictions.

It is important to note that the district court certified its contempt order under F.R.C.P. 54(b) as final and appealable under 28 U.S.C. § 1291. The certification gave no specific grounds why the court felt the order was appealable. It may well be that the court expected the individual defendants to be dismissed from the underlying breach of contract suit and concluded that certifying the contempt order was the only way to preserve the officials' appeal. Indeed, Consolidation Coal has not pursued its contract claim against the individual officials and Judge Kidd recently ordered those claims dismissed. *Consolidation Coal Co. v. Local 1702, United Mine Workers, et al.*, No. 81–0005–C (N.D. W.Va., June 10, 1982). Because the union officials are no longer parties to the main claim, they have no other opportunity for review of their contempt convictions. We hold, therefore, that their contempt convictions should be heard at this time. Because we are hearing the

officials' appeal, in the interests of efficiency, we believe we should hear the appeal of Local 1702 as well.[4]

IV.

■ Appellants also contend that the district court relied exclusively on the mass action theory to find them in contempt of the TRO. The court clearly stated in its order, however, two grounds for the contempt convictions—"the mass action of the members of Local 1702 in continuing to participate in the strike, and the failure of the officers and mine committeemen to take reasonable steps to end the strike, ...."

Clearly, the second finding is correct and constitutes an independent basis for upholding the contempt order. The local officials had been ordered by the court to use reasonable efforts to try to end the strike. They took no steps to return to work or to issue an official union return to work order. After their requests at the gate of the mine were ineffective, they chose not to try other available means to encourage the workers to return to work. They did not try to reach workers by phone and they did not threaten or take disciplinary action. On this record we find that there was ample evidence to support the district court's finding that the union officials failed to use reasonable efforts to end the strike.[5] Accordingly, we find it unnecessary to consider whether the theory of mass action provides a basis for finding the union guilty of contempt in this case or whether the

**4.** In Consolidation Coal's contract action against the local union, District Judge Kidd recently held that union liability based on a theory of mass action is no longer viable in this circuit and that on the facts before it, the local was not liable on a theory of common law agency. *Consolidation Coal Co. v. Local 1702, United Mine Workers, et al.*, No. 81–0005–C (N.D.W.Va., June 10, 1982). In this appeal, the defendants' liability is based on disobedience of the district court's TRO, not failure to fulfill any terms of the labor contract. Thus, Judge Kidd's holding that the local is not liable under the contract is not inconsistent with our affirmance of the district court's finding that the union failed to comply with the TRO by using reasonable efforts to end the strike.

**5.** The Fifth Circuit has upheld a contempt order on facts strikingly similar to the facts in this case. *See United States Steel Corp. v. United Mine Workers of America, et al.*, 598 F.2d 363 (5th Cir. 1979). In that case, after the district court issued a back to work order, several mine committeemen asked the miners to return to work and held several meetings urging the workers to go back to work. Because the union officials did not try to reach the workers by phone, did not threaten or take disciplinary action and did not return to work themselves, the court described the officials' efforts as "lacking authoritative forcefulness." *Id.* at 366. This conclusion supported both union liability for damages and civil contempt.

theory is still viable as a basis for local union liability after the Supreme Court's decision in *Carbon Fuel Co. v. United Mine Workers of America, et al.*, 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979).[6]

## V.

■ A good faith attempt by local union officials to comply with a court's back to work order can be a defense to a civil contempt order, even if those attempts were ineffective. *Consolidation Coal Co. v. International Union, United Mine Workers of America, et al.*, 537 F.2d 1226 (4th Cir. 1976). Substantial compliance or the inability to comply, likewise, can constitute such a defense. *See Washington Metropolitan Area Transit Authority v. Amalgamated Transit Union*, 531 F.2d 617 (D.C.Cir.1976). Appellants contend here that their efforts to persuade the miners to return to work at the closed meeting on February 1 and at the gate before each shift constituted good faith or substantial compliance with the court's order. The district court found that it was foreseeable that these efforts would be ineffective and, as noted above, that the union officials failed to take all reasonable means to end the illegal strike. These findings preclude a finding that appellants have established either the defense of good faith or substantial compliance. Because those findings are not clearly erroneous, they must be affirmed.

The union officials argue further that their preparation for the arbitration proceedings for the Anderson discharge prevented them from returning to work or otherwise fully complying with the district court's order. We believe the district court was correct in finding the possibility that one arbitration proceeding prevented every local union official from working or taking other reasonable steps to end the strike from January 31 to February 3 to be incredible.

---

**6.** In *Carbon Fuel*, the Court stated in dicta that the legislative history [of the Labor Management Relations Act] is clear that Congress limited the responsibility of a union for strikes in breach of contract to cases when the union may be found responsible according to the common law rule of agency.

## VI.

For the reasons stated, the order of the district court finding the appellants guilty of civil contempt is

AFFIRMED.

444 U.S. at 216, 100 S.Ct. at 413. Although we note that the liability of the local, as opposed to the district and international unions, was not before the court in *Carbon Fuel*, we express no opinion on the continued validity of the mass action theory of union liability in this circuit after *Carbon Fuel*.