**Rufus L. BENNETT; Keith Valentine; Patrick Miles, Plaintiffs–Appellees,**

v.

**MEDTRONIC, INC., a Minnesota corporation; Medtronic Sofamor Danek, Inc., an Indiana corporation, Defendants–Appellants.**

No. 01–55966.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 2002.

Filed March 27, 2002.

As Amended on Denial of Rehearing May 15, 2002.

William Z. Pentelovitch (argued), Maslon Edelman Borman & Brand, Minneapolis, MN; James C. Martin, Crosby, Heafey, Roach & May, Los Angeles, CA, for the defendants-appellants.

Craig E. Hunsaker, Brobeck, Phleger & Harrison, San Diego, California, for the plaintiffs-appellees.

Appeal from the United States District Court for the Southern District of California, Jeffrey T. Miller, District Judge, Presiding.

Before: SCHROEDER, Chief Judge, CUDAHY,[1] and McKEOWN, Circuit Judges.

## OPINION

McKEOWN, Circuit Judge.

This case requires us to address the scope of the Anti–Injunction Act, 28 U.S.C. § 2283, in the context of a district court order restraining the parties from seeking to enforce non-compete agreements in

---

1. The Honorable Richard Cudahy, Senior United States Circuit Judge for the United States Court of Appeals, Seventh Circuit, sitting by designation.

state court. The Anti–Injunction Act prohibits a federal court from enjoining state court proceedings except "as expressly authorized by ... Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* Because none of the exceptions are applicable here, we reverse the grant of injunctive relief.

## BACKGROUND

### I. THE PARTIES

This suit arises from Medtronic, Inc.'s effort to enforce covenants not to compete against former employees. Such covenants are variously referred to as non-compete or non-competition agreements. Medtronic acquired Sofamor Danek, Inc. and created a subsidiary, Medtronic Sofamor Danek, which is based in Memphis, Tennessee (collectively "Medtronic"). One of Medtronic's direct competitors is San Diego-based NuVasive, Inc. Both Medtronic and NuVasive design and manufacture devices relating to spinal surgery.

Three former Medtronic employees, Rufus Bennett, Keith Valentine, and Patrick Miles (collectively "the Employees"), entered into non-compete or confidentiality agreements with Medtronic or its predecessors. Medtronic alleges that the Employees violated these agreements by going to work for NuVasive after quitting their jobs with Medtronic.

The migration of a Medtronic employee to NuVasive spawned earlier litigation in Tennessee. In early 2000, NuVasive and Medtronic settled a suit with a factual and procedural history similar to the present one, and agreed that during an 18–month period between February 2000 and August 2001, they would litigate in Tennessee any of their disputes concerning non-compete agreements.

### II. THE PRESENT LITIGATION

On March 13, 2001, Medtronic brought suit against NuVasive in Tennessee state court. Medtronic advanced two causes of action: (1) a claim for declaratory judgment that NuVasive's hiring of the Employees was in violation of their contractual obligations to Medtronic under Tennessee law, and (2) a claim of tortious interference with prospective business advantage based on inducement to breach fiduciary duty. Medtronic sought to enjoin NuVasive from employing the Employees during the pendency of the action and for two years after entry of final judgment. Five weeks later, Medtronic filed a first amended complaint in its Tennessee action, adding the Employees and alleging several new causes of action.[2]

One month after the Tennessee suit was filed, the Employees brought suit against Medtronic in California Superior Court. In their complaint, the Employees sought: (1) a declaration that the non-compete clauses in their contracts are unlawful under California Business and Professions Code § 16600, et seq., (2) an injunction preventing Medtronic "from taking further

---

**2.** Although the first amended complaint is not a part of the district court record, the record contains numerous references to the complaint and the essence of the first amended complaint was central to the parties' arguments before the district court. We grant Medtronic's request that we take judicial notice of various filings in the Tennessee proceeding. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo,* 971 F.2d 244, 248 (9th Cir.1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.' "). The Employees' motion to strike Medtronic's supplemental excerpts of record is granted to the extent that it relates to documents other than the Tennessee court filings.

steps—in the Tennessee Lawsuit, or otherwise—that would impair [the Employees'] rights as California citizens and employees," and (3) relief under California's unfair competition laws from Medtronic's efforts to enforce the non-compete clauses. Medtronic removed this action to federal court.

On April 18, 2001 the Employees sought a temporary restraining order with respect to the pending proceedings in Tennessee state court. The district court granted the temporary restraining order for a thirty-day period, concluding that the injunction was "in aid of the court's jurisdiction, or necessary to protect or effectuate the court's judgment." The court also stated that the injunction was limited in scope because it would only "preclude Defendants from seeking to enforce Plaintiff's non-compete agreements in any court but" the federal district court in San Diego. Medtronic appeals from this order.

### DISCUSSION

We first consider jurisdiction to review this order. Ordinarily, temporary restraining orders, in contrast to preliminary injunctions, are not appealable; however, the fact that an order is simply denominated as a "temporary restraining order" does not end our inquiry. *See Geneva Assurance Syndicate, Inc. v. Med. Emergency Serv. Assoc.*, 964 F.2d 599, 600 (7th Cir.1992) (noting that "the name which the judge gives the order is not determinative."). It is the essence of the order, not its moniker, that determines our jurisdiction.

The Federal Rules of Civil Procedure provide that a temporary restraining order:

shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.

Fed.R.Civ.P. 65. For purposes of jurisdiction, an order that does not possess the essential features of a temporary restraining order will be treated like a preliminary injunction. *See Sampson v. Murray*, 415 U.S. 61, 87–88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of [a] potentially unlimited order as a temporary restraining order seems particularly unjustified").

It can be safely said that "the court's basis for issuing the order [was] strongly challenged." Here, both parties had an opportunity to file extensive written materials and present oral argument. *See San Francisco Real Estate Investors v. Real Estate Inv. Trust*, 692 F.2d 814, 816 (1st Cir.1982) (describing these as "considerations that militate in favor of assuming jurisdiction."). The duration of the order also compels us to treat it as a preliminary injunction, considering that the district court granted relief for three times the period contemplated by Rule 65.

Thus, on its face, the district court's order does not comply with the strictures of a temporary order. Admittedly, the order is far from unlimited in temporal scope. Nonetheless, we cannot appropriately characterize the district court's order as a temporary restraining order. We conclude that the order is akin to a preliminary injunction and is therefore reviewable as an interlocutory decision under 28 U.S.C. § 1292.

### I. THE ANTI-INJUNCTION ACT

The Anti-injunction Act provides as follows:

■ A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The Supreme Court has confirmed what is facially apparent; the breadth of the Act's prohibition is broad. *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 286–87, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297, 90 S.Ct. 1739.

■ The threshold question we address is whether the district court's order constitutes "an injunction to stay[state court] proceedings." Because the issue before us is a legal one, we review the injunction de novo. *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir.2001).

Rule 65 permits an extension of a temporary order "for a like period," meaning an additional ten days. Here the initial order was for thirty days and nothing in the record suggests that Medtronic consented to the temporary restraining order's extended duration. In their motion for a temporary restraining order, the Employees asked for an order against Medtronic "filing any paper, participating in any proceeding, posting any bond, or taking any other action in the Tennessee lawsuit, or in any other forum other than this proceeding ..." The effect of the court's order granting the motion is to halt the Tennessee proceedings.

It has been suggested that the Act does not apply because the district court order enjoins Medtronic rather than the Tennessee proceeding itself and because the claims and the parties in the two cases are different. The first argument is belied by the district court's language which "precludes Defendants from seeking to enforce Plaintiffs' non-compete agreements in any court" except the federal district court in San Diego. Ordering the parties not to proceed is tantamount to enjoining the proceedings. "It is settled that the prohibition of Section 2283 cannot be evaded by addressing the order to the parties ...." *Atlantic Coast,* 398 U.S. at 287, 90 S.Ct. 1739 (citations omitted). And, although NuVasive is not a party to the California action, both Medtronic and the Employees are parties to the suits in Tennessee and California. The claims in the two cases are intimately linked, albeit not identical. Regardless, the identicality of claims or parties is not the touchstone of the Act. The Act prohibits federal courts from enjoining state court proceedings, which is exactly what occurred here. Thus, the Act's prohibition is applicable, absent an exception.

## II. THE EXCEPTIONS

■ The next question is whether the circumstances of this case fall within one of the three exceptions to the Act—injunctions that: (1) Congress has expressly authorized; (2) are necessary in aid of the federal court's jurisdiction; or (3) are necessary to protect or effectuate the federal court's judgments. The Supreme Court has cautioned that the exceptions are to be narrowly construed and "should not be enlarged by loose statutory construction." *Atlantic Coast,* 398 U.S. at 287, 90 S.Ct. 1739. Adoption of a strict construction is consistent with the recognition that the Anti–Injunction Act "in part rests in the fundamental constitutional independence of the States and their courts ...." *Id.*

Although the district court referenced the judgment exception, the parties appropriately agree that no judgment is at issue.

Indeed, the Tennessee action was in its earliest stages at the time the injunction was issued and no judgment had been entered. Nor is there any suggestion that this case falls within the provision pertaining to congressional authorization. Thus, only the second exception, "in aid of the federal court's jurisdiction," is at issue here.

In *Atlantic Coast*, the Supreme Court explained that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." 398 U.S. at 295, 90 S.Ct. 1739.

■ [10] The Act creates a presumption in favor of permitting parallel actions in state and federal court. *Id.* (holding that "neither court was free to prevent either party from simultaneously pursuing both claims" in state and federal court); *see also Vendo v. Lektro Vend Corp.*, 433 U.S. 623, 642, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) (plurality) ("We have never viewed parallel in personam actions as interfering with the jurisdiction of either court ....."); *Kline v. Burke Const. Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922) ("Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court.").[3] Thus, a parallel in personam state court proceeding does not, in and of itself, present the sort of impediment envisioned by *Atlantic Coast. See Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir.1987) (determining "in aid of jurisdiction" exception did not permit district court to enjoin a

shareholder's derivative suit in state court that was similar to the case before the district court).

■ Parallel in personam actions in state court seriously impede a federal court's ability to adjudicate a case only where the state court proceeding threatens to "render the exercise of the federal court's jurisdiction nugatory." *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir.1996) (quoting Martin H. Redish, *The Anti–Injunction Statute Reconsidered*, 44 U. Chi. L.Rev. 717, 754 (1977)). Thus, there are only very limited circumstances where such a threat exists in personam cases. *See* e.g. *Flanagan v. Arnaiz*, 143 F.3d 540, 545 (9th Cir.1998) (injunction necessary to effectuate a settlement agreement over which federal court had retained jurisdiction); *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 540 (9th Cir.1994) (injunction necessary to preserve integrity of exclusive federal jurisdiction); *Swann v. Charlotte–Mecklenburg Bd. of Ed.*, 501 F.2d 383, 383–384 (4th Cir.) (invoking Act in school desegregation case); *Winkler*, 101 F.3d at 1202 (invoking Act in multi-district litigation).

■ The threat posed by a parallel state court proceeding is most acute when federal jurisdiction is dependent upon a res. For that reason, the most prominent "in aid of jurisdiction" exception is for in rem actions. Where a state court proceeding interferes with a federal court's jurisdiction over a res, the federal court may enjoin the state court proceedings. *See Vendo*, 433 U.S. at 641, 97 S.Ct. 2881; *Mitchum v. Foster*, 407 U.S. 225, 235, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Kline*

---

3. Kline interpreted a prior version of the statute that read as follows:

> The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be au-

thorized by any law relating to proceedings in bankruptcy.

260 U.S. at 229, 43 S.Ct. 79 (quoting Comp. St. § 1239). Even at that time, the exception "necessary in aid of the federal court's jurisdiction" was well-established. *Id.*

260 U.S. at 229, 43 S.Ct. 79; *Federal Shopping Way, Inc. v. Owners of NW 20 Real Estate*, 717 F.2d 1264, 1274 (9th Cir.1983). Consistent with this approach, injunctions are permitted where an in personam action bears substantial similarity to an in rem action. *See Alpine Land & Reservoir*, 174 F.3d 1007, 1013–1014 (9th Cir.1999) (water rights sufficiently similar to in rem actions).

Here, in the context of addressing an abstention argument, the district court recognized that there was no underlying res at issue. In passing, the Employees argue that the personal rights at stake in their case are "arguably analogous to a res." No authority is offered in support of that facially implausible proposition. Rather, the district court issued the injunction as a compromise effort "to reconcile and foster the parties' ability to litigate their claims." Although the intent behind the injunction may have been well-meaning, the injunction cannot be fairly characterized as "necessary" in the aid of federal jurisdiction. There can be no serious argument that the Employees' in personam case is of the rare breed that is typically excepted from the Act. To hold otherwise would effectively eliminate parallel or related federal and state proceedings, a result that is at odds with our constitutional structure and the intent of the Act itself.[4]

**REVERSED.**

---

4. Because we decide this case under the Anti-Injunction Act, we express no opinion on the merits of the Employees' argument that their noncompetition agreements are invalid under California law.