**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SERVICE EMPLOYEES INTERNATIONAL
UNION; DAVID REGAN; ELISEO
MEDINA, as Trustees for SEIU
United Healthcare Workers– West
and fiduciaries of the SEIU United
Healthcare Workers–West and
Joint Employer Education Fund;
SEIU UNITED HEALTHCARE
WORKERS–WEST, an unincorporated
association and fiduciary of the
SEIU United Healthcare Workers–
West and Joint Employer
Education Fund; REBECCA COLLINS,
as a participant in the SEIU
United Healthcare Workers–West
and Joint Employer Education
Fund,
          *Plaintiffs-Appellees,*

      v.

NATIONAL UNION OF HEALTHCARE
WORKERS; JOHN BORSOS; AARON
BRICKMAN; GAIL BUHLER; WILL
CLAYTON; JOAN EMSLIE; GLENN
GOLDSTEIN; MARK KIPFER; GABRIEL
KRISTAL; PAUL KUMAR; BARBARA
LEWIS; FREJA NELSON; FRED
SEAVEY; IAN SELDEN; SAL ROSSELLI;
JOHN VELLARDITA; PHYLLIS
WILLETT,
          *Defendants-Appellants.*

No. 09-15855

D.C. No.
3:09-cv-00404-
WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
January 14, 2010—San Francisco, California

Filed March 15, 2010

Before: Myron H. Bright,* Michael Daly Hawkins, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Bright

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

**COUNSEL**

Jeffrey B. Demain (argued), Stephen P. Berzon, Peter D. Nussbaum, Jonathan Weissglass, San Francisco, California, Robert M. Weinberg, Leon Dayan, Washington, DC, Glenn Rothner, and Emma Leheny, Pasadena, California, for the plaintiffs-appellees.

Daniel Siegel (argued), Jose Luis Fuentes, and Dean Royer, Oakland, California, for the defendants-appellants.

**OPINION**

BRIGHT, Circuit Judge:

When a continuing dispute over policy matters resulted in a final breakdown between the plaintiff Service Employees International Union ("SEIU"), and the leaders and officers of a local affiliate United Healthcare Workers ("UHW"), SEIU imposed a trusteeship over UHW. In response, the leaders and officers of UHW immediately resigned and organized a rival union, National Union of Healthcare Workers ("NUHW"), to compete with UHW for the representation of approximately 150,000 California healthcare workers. SEIU, UHW, and others immediately brought suit seeking injunctive relief to obtain restoration of its properties it alleged were illegally taken by the former officers and leaders of UHW. Defendants-appellants (the former officers, leaders, and NUHW) appeal from the issuance of a temporary restraining order ("TRO"), asserting that the district court lacks jurisdic-

tion in these proceedings under section 301(a) of the Labor Management Relations Act ("the Act"), 29 U.S.C. § 185(a).

For the reasons explained below, we conclude that the TRO is an appealable interlocutory order in the nature of a preliminary injunction, that this appeal is not moot, and that the district court possessed jurisdiction under section 301(a). We therefore affirm.

## I.     Background and Procedural History

## A.     Background

Plaintiff-appellee SEIU is an international labor organization with approximately one-hundred-fifty local affiliates and two million members. Plaintiff-appellee UHW is a local labor organization affiliated with SEIU that represents approximately 150,000 healthcare workers. UHW has been a part of SEIU since the 1930s.

In recent years, the leaders of SEIU and UHW disagreed over various policy matters not germane to this appeal. As a result of those disagreements, SEIU decided to impose a trusteeship on UHW pursuant to the SEIU constitution, under which SEIU would take full charge of the affairs of UHW. Relevant to this appeal, Article VIII, Section 7 of the constitution provides:

> (c)     Upon the institution of the trusteeship, all moneys, books and property of the Local Union or affiliated body shall be turned over to the Trustee.
>
> . . . .
>
> (e)     The Trustee shall take possession of all the funds, books, papers and other property of the Local Union or affiliated body.

In the weeks and months preceding imposition of the trusteeship, the then-leaders of UHW, who are the individual defendants-appellants in this suit, commenced a strategy to vigorously resist the trusteeship, disrupt union operations, and undermine the ability of any trustee to govern. For example, some individual defendants established a shadow email system through which they discussed how UHW should and would resist imposition of the trusteeship. In short, the leaders planned to orchestrate an ungovernable situation.

Once the trusteeship was imposed on UHW in January 2009, the trustees relieved the individual defendants of management responsibility. Several of the individual defendants departed their offices knowing that the offices were occupied by stewards and rank-and-file members who had barricaded themselves inside to resist the trusteeship. The district court found credible evidence established that those remaining inside removed or destroyed records and information. Further, although the individual defendants may not have expressly ordered or participated in the havoc, they anticipated the likely course of events and expected havoc to ensue. UHW information and property was removed or hidden with the tacit approval of the individual defendants. After being relieved of management responsibilities, the individual defendants resigned from UHW completely and formed a new union, defendant-appellant NUHW, to compete with UHW.

## B.   Procedural History

One day after imposition of the trusteeship, SEIU, UHW and others[1] brought an action in federal court against NUHW, the former officers of UHW, and others.[2] In the first of seven claims,[3] SEIU sought injunctive relief under section 301(a), which provides:

---

[1]Other plaintiff-appellees are individuals with ties to SEIU and UHW. Except where noted, "SEIU" refers to plaintiffs-appellees collectively.

[2]Collectively "appellants".

[3]Although unnecessary for our section 301 analysis, we record SEIU's other claims. SEIU's second and third claims alleged that the individual

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

SEIU's section 301(a) claim complained that the individual defendants "obstructed the effectuation of the trusteeship" in violation of the SEIU constitution. SEIU alleged that the individual defendants refused to turn over to the trustee moneys, books, and property of UHW as required by Article VIII, section 7, of the constitution, and wrongfully retained or destroyed UHW records and property. SEIU sought temporary and permanent injunctive relief restraining appellants from "obstructing the effectuation of the trusteeship," and from "destroying, retaining, using, sharing, or failing to return or protect UHW's property," including confidential information. SEIU also sought relief requiring certain individual defendants to vacate their positions as trustees of an SEIU benefit fund.

In March 2009, SEIU filed an ex parte application for a TRO along with an order to show cause. Both sides briefed

defendants breached fiduciary duties under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act. The fourth claim alleged a breach of contract, including breach of confidentiality agreements, in violation of California law. The fifth claim alleged a breach of fiduciary duty in violation of California law. The sixth claim alleged defendants wrongfully took property under California law and sought specific recovery of materials, records, data, notes, correspondence, blueprints, etc. The seventh claim sought damages for misappropriation of trade secrets under California law. This last claim was later dismissed by the district court as preempted by federal law.

the matter. Appellants disputed the district court's jurisdiction under section 301(a) to enjoin the individual defendants. On April 9, 2009, following a two-day evidentiary hearing, the district court granted the TRO. The district court determined that SEIU established a likelihood of success on the merits of their section 301(a) claim as well as a likelihood of irreparable injury if relief was denied. These conclusions are not challenged in this appeal. The district court rejected appellants' jurisdictional challenge, determining that a section 301(a) claim may be asserted against individual defendants so long as only injunctive relief is sought. In the alternative, the district court issued the TRO pursuant to its authority to manage civil discovery.

The TRO required appellants to (1) preserve UHW property within their possession, custody and control; (2) return to UHW all non-electronic UHW information; (3) duplicate all electronic information on any electronic storage medium; and (4) catalogue any withheld material. The TRO required compliance with the majority of its provisions within one week, but contained no expiration date. Instead, the TRO required compliance with its orders "pending resolution of the motion for a preliminary injunction," which had not yet been filed. On April 27, 2009, appellants timely appealed the TRO.

Meanwhile, the attorneys for both sides set to work, filing a deluge of motions and memoranda. In April 2009, the district court issued two orders responding to appellants' requests to modify the TRO. In May, the district court denied appellants' motion to dismiss the suit for lack of subject matter jurisdiction; the court concluded federal subject matter jurisdiction was adequately pled under sections 301 and 501[4] of the Act. On June 1, SEIU moved for a preliminary injunc-

---

[4]Section 501 imposes fiduciary duties on the "officers, agents, shop stewards, and other representatives of a labor organization." 29 U.S.C. § 501(a). The TRO was not sought or issued under section 501 and so we do not address it here.

tion and a few days later the district court denied appellants' motion to stay the TRO pending appeal. This court denied appellants' motion to stay the TRO on July 1.

On July 27, the district court granted the preliminary injunction in part. In so doing, the court substantially relied on its findings and conclusions contained in the TRO. The preliminary injunction "confirm[ed] the essential findings of the TRO" and "carri[ed] forward several governing principles from the TRO." (Order Granting In Part Mot. For Prelim. Inj. at 4, 8, July 27, 2009). The preliminary injunction also adopted definitions articulated in the TRO. Of special importance to SEIU's motion to dismiss this appeal, the preliminary injunction states, "all defendants in this action *remain subject to paragraph three of the TRO and subsequent orders* regarding the imaging of electronic devices." *Id.* at 17 (emphasis added).

The preliminary injunction was not appealed and litigation has continued without pause since July 2009. On December 14, 2009, after the parties briefed the appeal and oral argument was scheduled, SEIU moved this court to dismiss the appeal as moot. We deferred consideration of this motion until oral argument and address it below.

## II.   Appellate Jurisdiction and Standard of Review

Although the parties have agreed that the TRO is an appealable interlocutory order, we nonetheless verify our jurisdiction to review the TRO in light of SEIU's motion to dismiss this appeal as moot. *See Bova v. City of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009) (stating that an appellate court has an independent obligation to inquire into its jurisdiction). We conclude that this TRO is an appealable interlocutory order and that this appeal is not moot.

## A.   The TRO is an appealable interlocutory order

**[1]** Appellate courts possess jurisdiction of appeals from interlocutory orders of the district courts pertaining to injunc-

tions. 28 U.S.C. § 1292(a)(1). Ordinarily, temporary restraining orders are not appealable interlocutory orders. *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002). But "the fact that an order is simply denominated as a 'temporary restraining order' does not end our inquiry. It is the essence of the order, not its moniker, that determines our jurisdiction." *Id.* (citation omitted); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1097 (9th Cir. 2008) ("[W]e are not bound by what a district court chooses to call an order . . . .").

**[2]** An order denominated a TRO that possesses the qualities of a preliminary injunction is a reviewable interlocutory order. *Bennett*, 285 F.3d at 804. Where a district court holds an adversary hearing and the basis for the court's order was strongly challenged, classification as a TRO is unlikely. *Sampson v. Murray*, 415 U.S. 61, 87-88 (1974). Likewise, where the duration of the order exceeds the ordinary duration for TROs as set forth in the Federal Rules of Civil Procedure, classification as a TRO is unlikely. *Bennett*, 285 F.3d at 804. *In Bennett*, both parties had the opportunity to file extensive written materials and present oral argument, and the district court granted temporary relief for three times the period provided by Fed. R. Civ. P. 65. *Id.* Thus we held the order was "akin to a preliminary injunction" and reviewable under 28 U.S.C. § 1292(a)(1). *Id.*

**[3]** The circumstances here are analogous to those in *Bennett*. Both parties filed written memoranda regarding the propriety of the TRO. Indeed, appellants' submissions contested the district court's jurisdiction under section 301. Also significant is that the court held a two-day evidentiary hearing and that the TRO does not contain an expiration date within the duration for restraining orders set forth in the federal rules. *See* Fed. R. Civ. P. 65. Under these circumstances, we conclude the TRO is an appealable interlocutory order.

**B.   The appeal is not moot**

As previously observed, SEIU moved this court to dismiss the appeal as moot in December 2009. SEIU argues that the district court's subsequent order granting a preliminary injunction against appellants "superseded" the TRO and rendered this appeal moot. We disagree and deny SEIU's motion.

**[4]** "The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot." *Garcia v. Lawn,* 805 F.2d 1400, 1402 (9th Cir. 1986); *see also Pub. Util. Comm'n of the State of Cal. v. FERC,* 100 F.3d 1451, 1458 (9th Cir. 1996) ("The court must be able to grant effective relief, or it lacks jurisdiction and must dismiss the appeal."). As explained below, the preliminary injunction did not preclude the possibility of granting appellants effective relief.

**[5]** SEIU's complaint seeks permanent injunctive relief under section 301(a) and there is no indication that SEIU has abandoned this claim. Additionally, the preliminary injunction was issued by the district court pursuant to section 301(a). Thus, our resolution of the jurisdictional issue has relevance to the ongoing litigation.

**[6]** Moreover, and essential to our determination here, in the preliminary injunction the district court explicitly preserved a portion of the TRO as still effective after issuance of the injunction. The preliminary injunction states, "all defendants in this action remain subject to paragraph three of the TRO and subsequent orders regarding the imaging of electronic devices." (Order Granting In Part Mot. For Prelim. Inj. at 17). Thus it seems the TRO has not expired and remains enforceable. *Compare Am. Tunaboat Ass'n v. Brown,* 67 F.3d 1404, 1407 (9th Cir. 1995) (holding plaintiff's appeal of the denial of a preliminary injunction moot where defendant's

directive no longer in effect), *with Negrete*, 523 F.3d at 1098 (holding appeal from injunction not moot where the order remained viable and enforceable against the defendant). Contrary to SEIU's argument, the TRO was not completely superseded by the preliminary injunction. And because there remains the possibility of providing appellants effective relief, the controversy over the district court's subject matter jurisdiction is not moot.

The cases relied on by SEIU do not convince us otherwise. SEIU relies on *Schainmann v. Brainard*, 8 F.2d 11 (9th Cir. 1925), to argue that an appeal from a TRO is rendered moot by the subsequent issuance of a preliminary injunction. While such a claim is usually correct, that reliance here is misplaced. In *Schainmann*, the district court granted a TRO pending resolution of a temporary injunction. 8 F.2d at 12. Then the district court granted a preliminary injunction which superseded the TRO. *Id. Schainmann* does not support SEIU's argument that this appeal is moot because there, the preliminary injunction swallowed the whole of the TRO. That is not so here.

SEIU also relies on the Second Circuit's opinion in *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027 (2d Cir. 1974). In that case, appeal was taken from three temporary restraining orders, which "by their own terms were effective only pending determination of the motion for injunctive relief." *Id.* at 1030 (quotation omitted). After appeal was taken, the district court issued a preliminary injunction, which was then appealed. *Id.* The Second Circuit held that appeal from the temporary restraining orders was moot because the district court had subsequently rendered its decision on the preliminary injunction. *Id.* And this was true even though the TROs were otherwise appealable as preliminary injunctions. *Id.* at n.2. Although *Glen-Arden* may seem to answer the mootness question in SEIU's favor, we find distinguishable one crucial circumstance: unlike the TROs in *Glen-Arden*, the TRO here remained in force after issuance of the preliminary injunction, at least in part, because the district court expressly

noted the TRO's continued effectiveness in the text of the injunction. We thus reject SEIU's arguments that we must dismiss this appeal as moot.

Turning to our posture on review, although we ordinarily review the grant or denial of injunctive relief for abuse of discretion, *Am. Trucking Ass'ns., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009), here the issue is jurisdiction which we review de novo, *see Ting v. AT&T*, 319 F.3d 1126, 1134-35 (9th Cir. 2003) ("We review any determination underlying the grant of an injunction by the standard that applies to that determination"); *Building Material & Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500, 505 (9th Cir. 1989) (reviewing subject matter jurisdiction under section 301 de novo).

## III.   Discussion

In 1947, Congress enacted the Labor Management Relations Act in order to promote industrial peace. *See United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local 334*, 452 U.S. 615, 623 (1981) ("*Local 334*"). During the preceding years, "the effects of industrial strife [had] brought our country to the brink of general economic paralysis." H.R. Rep. 80-245, at 3 (1947). Congress believed that comprehensive legislation was needed "to define clearly the legitimate rights of employers and employees in their industrial relations." *Id.*

**[7]** Section 301(a) of the Act provides for federal jurisdiction in "suits for violation of contracts between an employer and a labor organization . . . or between any such labor organizations." 29 U.S.C. § 185(a). But "the legislation does more than confer jurisdiction . . . . It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455 (1957). In other words, section

301(a) has a substantive as well as a jurisdictional component. *See id.* at 456 (stating the substantive law in suits under section 301(a) is federal law).

The Supreme Court has instructed that section 301 "is not to be given a narrow reading." *Smith v. Evening News Ass'n*, 371 U.S. 195, 199 (1962). On several occasions, the Court has affirmed the principle first expressed in *Lincoln Mills*, 353 U.S. at 451, that section 301(a) "authorizes federal courts to fashion a body of federal law." *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988); *Int'l Broth. of Elec. Workers v. Hechler*, 481 U.S. 851, 855 (1987); *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 405 (1981); *Local 334*, 452 U.S. at 627; *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701 (1966). At the same time the Court has admonished federal courts not to engage in a "freewheeling inquiry" into what might be the most desirable rule irrespective of congressional pronouncements. *Reis*, 451 U.S. at 406 (quotation omitted).[5]

**[8]** Here, there is no dispute that the SEIU constitution is a "contract between labor organizations," within the bailiwick of federal courts. *See Local 334*, 452 U.S. at 623 (holding that union constitutions are "contracts between labor organizations" within section 301(a)). The SEIU constitution is an agreement between the international union and its local affiliates, providing jurisdiction over, and the rights of, its local

---

[5]While we recognize that we must pay deference to congressional intention, *see Reis*, 451 U.S. at 406, the parties have not provided, nor could we discern, express congressional pronouncements on the propriety of injunctive relief against individual union members under section 301(a). One exchange in the House of Representatives indicates, but does not conclusively establish, that injunctive relief may be appropriate in some circumstances. 93 Cong. Rec. 3656-3657 (1947) (describing the LMRA as contemplating "not only the ordinary lawsuits for damages but also such other remedial proceedings, both legal and equitable, as might be appropriate in the circumstances").

unions. 2008 SEIU Constitution and Bylaws, Art. III, Art. XV. Thus, SEIU's claim against the individual defendants is for breach of an "interunion contract," *see Wooddell v. Int'l Broth. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991), and ostensibly within section 301(a).

**[9]** Despite the Court's pronouncements on the breadth of section 301(a), the Court has approached in measured fashion the applicability of section 301(a) to actions against individual union members. For example, in *Atkinson v. Sinclair Refining Co.*, the Court held that section 301(a) does not authorize a damages action against individual union members when their union is liable for violating a no-strike clause in a collective bargaining agreement. 370 U.S. 238, 247-48 (1962). In *Reis*, the Court held that section 301(a) does not sanction damages actions against individual employees for violating the no-strike provision of a collective-bargaining agreement, whether or not their union participated in or authorized the strike. 451 U.S. at 417. *Reis* expressly left open the issue of whether section 301(a) permits federal jurisdiction in actions against union members seeking injunctive relief for breach of a union constitution. *Id.* at 415 n.17. But as *Atkinson* and *Reis* illustrate, the Court does not rush to provide a federal forum under section 301(a) in actions against individual union members.

**[10]** Since *Reis*, the Second and Eleventh Circuits have expressly held that section 301(a) permits injunctive suits against individual defendants for violations of a union constitution. *Shea v. McCarthy*, 953 F.2d 29, 32 (2d Cir. 1992); *Int'l Union of Elec. v. Statham*, 97 F.3d 1416, 1421-22 (11th Cir. 1996). In *Shea*, the Second Circuit found that permitting jurisdiction over union officials in suits under section 301(a) seeking equitable relief would promote accountability, stability, and other interests. 953 F.2d at 32. In *Statham*, the Eleventh Circuit considered an international union's dispute with local officials, "rather than a strictly internal dispute within the local." 97 F.3d at 1422. These decisions directly support

SEIU's contention that the district court had jurisdiction to issue the TRO.

**[11]** Other circuit courts have permitted section 301(a) actions against individual union members without expressly considering whether section 301(a) provides jurisdiction over individual union members or former officers. *See Int'l Bhd. of Boilermakers v. Local Lodge D354*, 897 F.2d 1400, 1401-02 (7th Cir. 1990) (concluding the district court had jurisdiction to entertain a suit brought by an international union under section 301 against a former local affiliate and its officers); *Tile, Marble, Terrazzo, Finishers, Int'l Union v. Local 32*, 896 F.2d 1404, 1416 (3d Cir. 1990) ("*Local 32*") (affirming an equitable judgment under section 301(a) against the former officers of a local affiliate); *Hansen v. Huston*, 841 F.2d 862, 863-64 (8th Cir. 1988) (holding section 301(a) jurisdiction existed in a dispute between an international and a local union which arose under the union constitution and affirming a preliminary injunction against the suspended board members of the local); *Catalytic, Inc. v. Monmouth & Ocean County Bldg. Trades Council*, 829 F.2d 430, 434 (3d Cir. 1987) (upholding an injunction issued under section 301 against a local union and its individual officers); *Consolidation Coal Co. v. Local 1702, United Mineworkers*, 683 F.2d 827, 829-30 (4th Cir. 1982) (rejecting the argument that section 301(a) precluded a district court from issuing civil contempt fines against union officials for disobeying the court's back-to-work order because the power to fine is based on the power to fashion equitable relief). Although these decisions did not directly address the propriety of section 301(a) jurisdiction over individual defendants in actions for breach of a union constitution, they demonstrate that federal courts have applied section 301(a) in a manner similar to the district court here. Thus in its order issuing the TRO, the district court was not without support in concluding that a section 301 claim "may be asserted against individual defendants so long as only *injunctive* relief is sought."

Against this backdrop, appellants argue that this court foreclosed section 301(a) jurisdiction over individual union members in *Building Material & Dump Truck Drivers, Local 420 v. Traweek*, 867 F.2d 500 (9th Cir. 1989).

Appellants assert that *Traweek* stands for the proposition that a union cannot sue one of its members under section 301(a). Further, appellants argue that we affirmed this proposition in *Breda v. Scott*, 1 F.3d 908 (9th Cir. 1993). SEIU responds that *Traweek* and *Breda* are distinguishable because those cases concerned section 301(a) actions for damages, not injunctive relief. We agree with SEIU.[6]

Our decision in *Traweek* arose from a union's action against two former officers of a local union for misuse of union funds and other violations of union rules, which resulted in an order directing the former officers to repay $55,000 to the union. 867 F.2d at 503-05. On appeal, the officers challenged the district court's subject matter jurisdiction. *Id.* at 505. The *Traweek* court broadly framed the section 301(a) issue as whether the statute "contemplates a suit brought by a union against an individual union member for breach of internal union rules." 867 F.2d at 507. This court's analysis focused on language in Supreme Court decisions describing the purpose of section 301(a) as focusing on the accountability of unions, not union members. *Id.* We also expressed concerns with creating a federal forum for every "minor infraction of union rules" and "internal squabble[ ]."

---

[6]We note that the question dividing the parties here has divided our district courts as well. Here, the district court's order granting the TRO concludes that a section 301 claim may be asserted against individual defendants so long as only injunctive relief is sought. But another district court has held that *Traweek* prohibits unions from seeking injunctive relief against a member under section 301. *See SEIU v. Rosselli*, 2008 WL 3342721, at *4 (C.D. Cal. July 22, 2008). *See also Int'l Bhd. of Elec. Workers v. Dueck*, 148 F. Supp. 2d 955, 963 (D. Ariz. 2000) (stating *Traweek* held that a union's lawsuit against one of its members does not fall within the ambit of section 301).

*Id.* at 508. In discussing *Reis*, we explained that the Court's "primary focus . . . was on Congress' intent to immunize individual members from a [section 301] suit." *Id.* at 508. Thus in our evaluation of the union's action for damages we held that the district court lacked subject matter jurisdiction over the union's section 301(a) claim.

We acknowledge that *Traweek* broadly framed the issue before it. But neither the question of injunctive relief, nor circumstances similar to this case were before us. *Traweek* concerned individual wrongs and individual liability. In such cases, there is good reason to deny jurisdiction. *See id.* (expressing concern with creating a federal forum for every internal squabble and infraction). Here we have not the personal liability of one or two former officers, but a contest between two unions competing for the hearts and minds of the rank and file. The TRO was issued because of conduct by former officers and leaders of a local union who left that union and organized a new competing union.

Moreover, in *Traweek* this court had the benefit of the Supreme Court's decisions in *Reis* and *Atkinson*, which thoroughly explained that Congress, in enacting section 301, intended to shield individual members from financial liability. But *Reis* made no pretensions of determining the question of injunctive relief. *See* 451 U.S. at 415 n.17 ("[W]e have no occasion to decide that issue now."). We believe that questions of jurisdiction under section 301(a) are best approached piecemeal. Because the matter of injunctive relief was not before this court in *Traweek*, we conclude that *Traweek* does not foreclose SEIU from seeking injunctive relief.[7]

Having concluded that *Traweek* does not dispose of this appeal, we must consider whether section 301(a) provides federal jurisdiction for an international union's action for

---

[7]This same reasoning distinguishes *Breda*. *See* 1 F.3d at 909 (giving passing mention to *Traweek* in a suit for damages under section 301(a)).

breach of the union constitution against the former officers of a local union.

**[12]** We agree with the Eleventh Circuit in *Statham* that section 301(a) jurisdiction is proper in a case such as this. In *Statham*, an international union brought suit against former local union officers who had sold real estate the international union claimed belonged to it. 97 F.3d at 1417. The international union filed suit in federal court asserting breach of fiduciary duty under 29 U.S.C. § 501, breach of contract under section 301(a), and numerous state law claims. *Id.* at 1418. The district court dismissed the suit for lack of jurisdiction, concluding that section 301(a) does not permit suits by a union against individuals. *Id.* The Eleventh Circuit reversed, holding jurisdiction under section 301(a) was proper where the union sought equitable relief against the former officers. *Id.* at 1422.

We agree with *Statham* for several reasons. First, we find persuasive the Second Circuit's reasoning in *Shea* that the "interests of accountability, consistency, conformity and stability [in labor relations] will be served if union officials who violate obligations" under the union constitution are subject to suit under section 301(a). 953 F.2d at 32; *see also Smith*, 371 U.S. at 200 (discussing these considerations). SEIU seeks the return of moneys, books, and property that rightfully belong to UHW and to prevent the use of confidential information in the ongoing struggle between UHW and the newly formed NUHW, which is controlled by the former officers of UHW. Providing a federal forum for injunctive relief against the former officers and leaders of UHW promotes the stability of the parent-local relationship and the representation of rank-and-file members.

Second, permitting section 301(a) jurisdiction here promotes a consistent forum for labor disputes. In *Kinney v. International Brotherhood of Electrical Workers*, 669 F.2d 1222, 1229 (9th Cir. 1981), this court held that section 301(a)

allowed a union member to bring suit in federal court against his union for breach of the union constitution. And federal courts have jurisdiction to review trusteeships to insure that they were imposed for legitimate purposes. *See Lynn v. Sheet Metal Workers' Int'l. Ass'n*, 804 F.2d 1472, 1480 (9th Cir. 1986); *Local 32*, 896 F.2d at 1410-11. As such, "it makes no sense to require [a union] to seek equitable relief from the wrongdoing individuals in a separate forum, where different rules of law might apply." *Shea*, 953 F.2d at 33.

Third, we do not believe that permitting suits for injunctive relief will involve the federal courts in every "minor infraction of union rules" and "internal [union] squabble[ ]." *Traweek*, 867 F.2d at 508. Certainly, the costs of litigation and the high bar to obtaining injunctive relief are deterrents. Additionally, we see no flood of litigation in the Second and Eleventh Circuits which already permit suits like the one here. Moreover, any concerns are outweighed by the circumstances here: in resisting the trusteeship, the individual defendants went so far as to orchestrate the removal and destruction of documents rightfully belonging to the local union. Preventing our district courts from enjoining such behavior frustrates the Act's purpose of promoting industrial peace.

**[13]** Finally, we are guided by the principles that section 301(a) is not to be interpreted narrowly and that section 301(a) contemplates that federal courts fashion a body of law for the enforcement of contracts between labor organizations. *See Lincoln Mills*, 353 U.S. at 451. Here, SEIU and the newly-formed NUHW are actively engaged in a struggle over representation of the 150,000 members of UHW. This struggle began when the individual defendants, who were in control of an SEIU affiliate (UHW), vigorously opposed imposition of a trusteeship under the SEIU constitution. The federal responsibility in promoting industrial peace and in providing a forum for disputes concerning union constitutions requires federal courts have jurisdiction to provide injunctive relief where an international union brings an action against

the former officers of a local affiliate for breach of the union constitution.[8]

**AFFIRMED.**

**MOTION TO DISMISS DENIED**.

---

[8]We reject appellants' argument that the district court cannot order injunctive relief against NUHW because enforcement against the individual defendants who control NUHW effectively enjoins NUHW. *See* Fed. R. Civ. P. 65(d)(2) (stating injunction binds persons in active concert or participation with the parties). We reject appellants' failure-to-exhaust-intraunion-remedies argument on the ground that it was not raised below. *See Rothman v. Hosp. Serv. of S. Cal.*, 510 F.2d 956, 960 (9th Cir. 1975) ("It is a well-established principle that in most instances an appellant may not present arguments in the Court of Appeals that it did not properly raise in the court below."). Moreover, appellants have not explained what remedies were not exhausted or how intra-union remedies apply to individuals who have resigned from the union.