NOT FOR PUBLICATION

FILED

JUN 10 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-12-1163-MkDJu |
| JOHN ERNEST BORSOS and CLARE HART BORSOS, | Bk. No. 10-53374 |
| | Adv. No. 11-02183 |
| Debtors. | |
| JOHN ERNEST BORSOS, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| UNITED HEALTHCARE WORKERS-WEST, | |
| Appellee. | |

Argued and Submitted on March 22, 2013
at Sacramento, California

Filed – June 10, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Chief Bankruptcy Judge, Presiding

---

Appearances:    Daniel M. Siegel of Siegel & Yee argued for appellant John E. Borsos; Jeffrey B. Demain of Altshuler Berzon LLP argued for appellee United Healthcare Workers-West.

---

Before:  MARKELL, DUNN and JURY, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Before his removal from office on January 27, 2009, John Borsos ("Borsos") was an elected officer and employee of United Healthcare Workers West ("UHW"). A jury verdict rendered in federal district court found Borsos and others liable for diverting UHW resources for non-UHW purposes, and on April 12, 2010, the district court entered judgment against Borsos in the amount of $66,600. Later that same year, in December 2010, Borsos filed a chapter 7[1] bankruptcy case. UHW then filed a nondischargeability complaint against Borsos under § 523(a)(4). Based primarily on the district court jury's findings, the bankruptcy court held after trial that the district court judgment debt arose from a fiduciary defalcation excepted from discharge under § 523(a)(4). Borsos appealed.

During the pendency of this appeal, the United States Supreme Court ("Supreme Court") decided Bullock v. BankChampaign, N.A., 133 S.Ct. 1754 (2013). In Bullock, the Supreme Court interpreted § 523(a)(4) defalcation as requiring a specific subjective state of mind. Bullock's scienter requirement effectively abrogated Ninth Circuit law, which formerly did not require any particular state of mind to except a debt from discharge based on a § 523(a)(4) fiduciary defalcation.

Following now-abrogated Ninth Circuit law, the bankruptcy court did not make any findings regarding Borsos' state of mind.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

Consequently, we must VACATE AND REMAND so the bankruptcy court can make further findings.

## FACTS[2]

This appeal is one skirmish in a larger battle between the Service Employees International Union ("SEIU") and the former management of UHW. SEIU is a large international labor union, and UHW has been a local SEIU affiliate since the 1930's.[3]

Over the last several years, SEIU and former UHW management ("Former UHW Management") have increasingly disagreed on various policy and organizational matters. These disagreements ultimately came to a head in January 2009, when Former UHW Management refused to cooperate with the SEIU-ordered transfer of 65,000 UHW members to a different local SEIU affiliate.[4]

That refusal to cooperate was the impetus for SEIU's appointment of a trusteeship on January 27, 2009, to take over the management of all of UHW's affairs. The transition of control to the trusteeship did not occur in a peaceful or orderly manner. As Former UHW Management left their offices upon being

---

[2]There is little dispute over the basic facts relevant to this appeal. As the bankruptcy court indicated, the real dispute is over what those facts demonstrate in terms of the dischargeability of UHW's judgment against Borsos.

[3]Some of the facts set forth herein are drawn from Serv. Employees Int'l Union v. Nat. Union of Healthcare Workers, 598 F.3d 1061 (9th Cir. 2010) ("SEIU v. NUHW"). Others are drawn from the District Court's preliminary injunction order, which was the order on appeal in SEIU v. NUHW.

[4]The stated purpose of the transfer was to consolidate all California long-term healthcare workers who were members of various local SEIU affiliates into a single local affiliate dedicated exclusively to long-term healthcare workers.

3

relieved of their duties, UHW stewards and rank-and-file UHW members barricaded themselves in the union offices to protest and resist the trusteeship.  As a net result of this transition, key union records and other union assets were misplaced, removed and/or destroyed.

The day after the appointment of the trusteeship, Former UHW Management took the next step in their campaign to resist SEIU's initiatives, and SEIU took the next step in its campaign to quell that resistance.  Former UHW Management formally resigned their membership in UHW and announced the formation of a rival union known as the National Union of Healthcare Workers ("NUHW").  Meanwhile, SEIU filed a complaint ("District Court Complaint") against Former UHW Management and NUHW in the United States District Court for the Northern District of California (Case No. C-09-00404).  That complaint stated claims for the following relief: (1) injunctive relief, (2) breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), (3) breach of fiduciary duty under the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), (4) breach of contract, (5) breach of fiduciary duty under California law, (6) specific recovery of certain materials (including records, data, notes, blueprints, etc.) allegedly wrongfully taken from UHW, and (7) misappropriation of trade secrets under California law.

While the District Court Complaint covered much ground, by the time the trial was completed and the matter submitted to the jury for decision, the focus of the litigation had been significantly refined.  In relevant part, the final charge to the jury ("Jury Instructions") instructed the jury to determine the

4

liability of the individual defendants, all Former UHW Management, for "diversion of resources" and "salary and benefits" during January 2009, up until the time they were removed from or resigned their positions as UHW officials.

The Jury Instructions directed the jury to impose diversion of resources liability to the extent each defendant used UHW-resources for non-UHW purposes, measured by the value of the resources diverted. See Jury Instructions (April 6, 2010) at 10:2-7.

In addition, the Jury Instructions directed the jury to impose salary and benefits liability to the extent each defendant was in breach of his or her fiduciary duties during January 2009. In imposing salary and benefits liability, the Jury Instructions in essence called upon the jury to ascertain what proportion of each defendant's January 2009 work time was diverted to non-UHW purposes and to assess damages equal to the value of the diverted work time, using each defendant's January 2009 salary and benefits as a measure. See Jury Instructions (April 6, 2010) at 9:18-27; see also id. at 6:18-7:27 (identifying the fiduciary duties the defendants owed to UHW).

Based on the Jury Instructions, the jury rendered a verdict finding many of the individual defendants, including Borsos, liable for diversion of resources and for salary and benefits. However, the jury's verdict and the Jury Instructions indicate that the jury was not required to consider, and did not consider, the mental state of any of the defendants in diverting UHW resources and work time to non-UHW purposes.

The jury found Borsos individually liable in the amount of

5

$60,000 for diversion of resources liability and in the amount of $6,600 for salary and benefits liability, for a total liability in the amount of $66,600. On April 12, 2010, the district court entered judgment against Borsos in that amount based on the jury's verdict.[5]

Borsos thereafter filed his chapter 7 bankruptcy on December 22, 2010. In his Schedule D of secured creditors, Borsos listed SEIU and UHW jointly as creditors holding a secured claim against his residence based on an abstract of judgment they recorded in October 2010.

On March 15, 2011, UHW filed a nondischargeability complaint against Borsos, alleging that the district court judgment against Borsos constituted "'a debt . . . for . . . defalcation while acting in a fiduciary capacity' within the meaning of 11 U.S.C. § 523(a)(4). . . ." Complaint (Mar. 15, 2011) at ¶ 14.

Both sides filed cross-motions for summary judgment, which the bankruptcy court denied. Instead, the bankruptcy court held a one-day trial on February 13, 2012. By stipulation of the parties, trial was limited to the presentation of materials from the record in the district court litigation. On March 15, 2012, the bankruptcy court orally recited its findings of fact and conclusions of law into the record.

Among its key findings, the bankruptcy court stated the district court jury had found that Borsos had used UHW resources

---

[5]The district court's judgment was entered pursuant to Civil Rule 54(b). The ERISA claim for relief was not tried at the same time as all of the other claims for relief, and the district court stated in its Civil Rule 54(b) judgment that the ERISA claim would be resolved sometime later.

6

and funds "in ways that were not appropriate" in the process of resisting SEIU's appointment of a trusteeship over UHW's affairs. The bankruptcy court also stated the district court jury found Borsos liable in the amount of $60,000 for diversion of resources and $6,600 for salary and benefits.

The bankruptcy court held that a trust existed for purposes of § 523(a)(4) and that Borsos was fiduciary of that trust. The court ruled: (1) that under LMRDA, codified at 29 U.S.C. § 501, UHW's "money and property" were property of a technical trust created by statute without reference to and before the occurrence of any particular wrongdoing; (2) that Borsos and the other individual defendants in the district court action were trustees of that trust; and (3) that 29 U.S.C. § 501(a)[6] imposed on Borsos

[6]The full text of 29 U.S.C. § 501(a) provides:

(a) Duties of officers; exculpatory provisions and resolutions void

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under

(continued...)

7

and the other individual defendants certain fiduciary duties with respect to that trust, including in relevant part the following duties:

> [T]o hold its money and property solely for the benefit of the organization and its members; and to manage, invest and expend the same in accordance with its constitution and bylaws . . . and any resolution of the governing bodies adopted [thereunder] . . . .

Trial Tr. (Mar. 15, 2012) at 9:19-23.

The bankruptcy court also determined that, under the doctrine of issue preclusion, it would not revisit the district court jury's findings. The court indicated that it was relying upon the jury verdict and Jury Instructions in concluding that the district court judgment should be excepted from discharge under § 523(a)(4).

Finally, the bankruptcy court ruled that the conduct for which the jury found Borsos liable constituted defalcation for purposes of the nondischargeability statute. However, in making its defalcation ruling, the court did not make any findings as to Borsos' state of mind when he diverted his work time and other UHW resources to non-UHW purposes.

On March 16, 2012, the bankruptcy court entered its nondischargeability judgment, and Borsos filed his notice of appeal from that judgment on March 21, 2012.

---

[6](...continued)
his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.

8

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err in ruling that the district court jury's liability findings established a debt based on defalcation for purposes of § 523(a)(4)?

**STANDARDS OF REVIEW**

On appeal from a nondischargeability judgment, we review the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo. See Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011). However, the ultimate question of whether a particular debt is dischargeable is a mixed question of fact and law that we review de novo. Id.; see also Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004) (stating that mixed questions are reviewed de novo when they require the court "to consider legal concepts and exercise judgment about values animating legal principles.").

**DISCUSSION**

Borsos assigns error to two distinct aspects of the bankruptcy court's nondischargeability determination. Most relevant for our purposes, Borsos contends on appeal that the conduct for which the jury found him liable did not qualify as defalcation under § 523(a)(4), so the bankruptcy court should not have found § 523(a)(4)'s defalcation requirement satisfied. Borsos also contends on appeal that 29 U.S.C. § 501 did not

9

impose upon him the type of fiduciary capacity covered by § 523(a)(4).[7]

In Borsos' view, the district court jury's liability findings simply don't add up to defalcation under § 523(a)(4). In order to address Borsos' defalcation argument, we must consider what constitutes defalcation under § 523(a)(4). In terms of conduct, defalcation can occur for purposes of § 523(a)(4) if the fiduciary either misappropriated trust assets or failed to account for them. See Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1190 (9th Cir. 2001) (citing Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir. 1996)). In turn, a fiduciary misappropriates trust assets if he uses them for an improper purpose in light of the trust's terms. See Lovell v. Stanifer (In re Stanifer), 236 B.R. 709, 719 (9th Cir. BAP 1999); see also OXFORD ENGLISH DICTIONARY (defining a misappropriation in relevant part as an "[a]ppropriation of (something) for a wrong use . . . .").

As set forth in the facts section, supra, all of the district court jury's liability findings against Borsos were based on Borsos' diversion of his work time and other UHW resources for non-UHW purposes. This conduct squarely falls within the definition of misappropriation, which in turn satisfies the conduct component of § 523(a)(4)'s defalcation requirement.

But our examination of Borsos' defalcation argument does not

---

[7]In light of our holding on the defalcation issue, we need not and will not address the fiduciary capacity issue.

10

end there because the Supreme Court recently held that § 523(a)(4)'s defalcation requirement consists not only of a conduct component but also of a scienter component. See Bullock, 133 S.Ct. at 1759-60. As the Court stated its holding:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.

Id. at 1759 (quoting American Law Institute, Model Penal Code § 2.02(2)(c), p. 226 (1985)).

As a result, in order to qualify as a § 523(a)(4) defalcation, debtors must have acted either with knowledge that their conduct would constitute a breach of their fiduciary duty, or with conscious disregard or willful blindness to "a substantial and unjustifiable risk" that their conduct would constitute a breach of their fiduciary duty. Id. at 1759.

Prior to Bullock, the rule in the Ninth Circuit was that no particular state of mind was required to satisfy § 523(a)(4)'s defalcation requirement. See Sherman v. Sec. and Exch. Comm'n (In re Sherman), 658 F.3d 1009, 1017-18 (9th Cir. 2011). Indeed, even an innocent failure to account for trust property could constitute a defalcation. See id. (citing In re Hemmeter, 242 F.3d at 1190-91). Bullock, however, has overruled In re Sherman and In re Hemmeter to the extent those two decisions did not recognize that § 523(a)(4)'s defalcation

11

requirement included a scienter component. As such, we are not required to follow them. See Deitz v. Ford (In re Deitz), 469 B.R. 11, 23 (9th Cir. BAP 2012) (Ninth Circuit case not binding precedent when it has been effectively superseded by an intervening Supreme Court decision containing reasoning "clearly irreconcilable" with prior Ninth Circuit decision).

In excepting from discharge the district court judgment debt, the bankruptcy court explicitly ruled that Borsos' conduct constituted defalcation under § 523(a)(4). But in making that ruling, the bankruptcy court did not make any findings regarding Borsos' mental state.[8] Civil Rule 52(a) applies in adversary proceedings and requires bankruptcy courts to make factual findings in support of their decisions. When the bankruptcy court does not provide complete findings, we may vacate and remand for further findings. See First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC. (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 871 (9th Cir. BAP 2012).

Notwithstanding the above, we are not obligated to vacate and remand for further findings if the record otherwise provides us with a complete understanding of the issues appealed. See id. (citing Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001)). We also need not remand if we reasonably can infer from the court's findings other facts that would suffice to support the court's decision. See Brock v. Big Bear Market No. 3, 825 F.2d

---

[8]The bankruptcy court's omission makes perfect sense. At the time of its ruling, Bullock was not yet before the Supreme Court, and In re Sherman and In re Hemmeter did not require the bankruptcy court to make any findings regarding Borsos' mental state.

12

1381, 1384 (9th Cir. 1987). Nonetheless, we must vacate and remand here because we cannot ascertain with any certainty Borsos' mental state either from the bankruptcy court record or from the bankruptcy court's findings.

Put another way, when the bankruptcy court does not apply the correct legal standard, remand still may be unnecessary if the record is complete and the outcome of the case is beyond doubt upon our application of the correct legal standard. See Hopkins v. Asset Acceptance LLC (In re Salgado-Nava), 473 B.R. 911, 922 (9th Cir. BAP 2012) (citing Wharf v. Burlington N.R.R. Co., 60 F.3d 631, 637 (9th Cir. 1995)). Here, however, the outcome regarding Borsos' state of mind is not beyond doubt. There are facts in the record from which the bankruptcy court arguably could have inferred that Borsos diverted UHW's resources without the culpable state of mind Bullock requires.

For instance, Borsos claimed at trial and on appeal that, when Former UHW Management were still in charge of UHW, they passed a resolution authorizing Borsos to take the actions that the district court jury later found him liable for. Therefore, Borsos reasoned, he did not commit § 523(a)(4) defalcation. While we agree with the bankruptcy court's conclusion that Borsos cannot use his authorization argument to collaterally attack the jury's finding that Borsos diverted UHW resources, the jury made no findings regarding Borsos' mental state. Thus, the bankruptcy court arguably could have inferred that, to the extent Borsos believed he had been duly authorized by Former UHW Management, he did not divert UHW resources either knowing that he was breaching his fiduciary duty or in reckless disregard of that duty. On the

13

other hand, the bankruptcy court also might have reasonably inferred the opposite result from the same facts: that Borsos did not really believe that he was duly authorized to use UHW resources for the purposes of undermining SEIU's initiatives and starting up a rival union.

In the final analysis, what the bankruptcy court ultimately finds on remand regarding Borsos' mental state likely will hinge in part on the bankruptcy court's assessment of Borsos' credibility. See generally Hernandez v. New York, 500 U.S. 352, 364 (1991) (noting that findings regarding a person's state of mind largely turn on the court's assessment of credibility); Batson v. Kentucky, 476 U.S. 79, 98 & n. 21 (1986) (same). Accordingly, the bankruptcy court may find it appropriate on remand to reopen the record to permit the presentation of additional evidence, including but not necessarily limited to the presentation of testimony from Borsos.

**CONCLUSION**

For the reasons set forth above, we VACATE the bankruptcy court's judgment, and we REMAND so the bankruptcy court can make further findings.